### HARRIS v. SMITH & COMPANY.

Since it appears from the petition that the contract which is the basis of the suit in this case is illegal and contrary to public policy, in that it was understood by both parties that the $2,000 difference in a land trade was to be paid from the county funds by the working of a public road for the benefit of the party to whom the difference was payable, a general demurrer alleging that the petition set forth no cause of action or ground for equitable relief was sufficient to raise the point, and the court did not err in sustaining this demurrer and dismissing the action.

No. 5445.   FEBRUARY 18, 1927.

Equitable petition. Before Judge W. E. Thomas. Brooks superior court. May 4, 1926.

*Sam T. Harrell,* for plaintiff. *Branch & Snow,* for defendants.

RUSSELL, C. J.   Pretermitting any discussion as to other reasons why the lower court might properly have sustained the general demurrer and dismissed the petition, it appears from the statements of the petition itself that for at least one good reason the court did not err in rendering the judgment of which complaint is made. The action is a proceeding in equity. No principle is more fundamental in courts of chancery than that which enjoins that he who comes into equity must come with clean hands; and likewise that where equity finds both parties in pari delicto, it will not extend relief, but will leave them where it finds them. It is plain from the petition (and it is expressly referred to in the brief and argument of counsel for the plaintiff in error) that the promise of

Contracts, 13 C. J. p. 493, n. 18.

Malloy (in behalf of the defendant partnership composed of Smith and himself) was to work a public road through certain property of Harris and to be purchased by Harris, which it was estimated would add $2,000 to the value of Harris's realty holding.   Harris relied upon this promise, as it is plainly alleged in the petition, because Malloy was chairman of the board of county commissioners, having in charge the convicts used in working the public roads. It is alleged that he did work the convicts in building one third of the road which he promised to build, but built the road no further than through the land belonging to the partnership of Smith & Company.   As alleged in the petition, the reason why the stipulation as to the road which was to be built as a part of the consideration for the contract was omitted from the writing was because it would be embarrassing to Malloy, "because somebody might have something to say about me [Malloy] agreeing to build the road while I am chairman of the county commissioners." From the statements of the petition no other conclusion can be reached than that Harris knew that the $2,000 of value which he was to receive as part of the purchase-price for his land was to be supplied from the resources of Brooks County, since the county alone had the authority to open and work the proposed new road as shown upon the plat.   If the facts are as alleged in the petition (and for the purposes of demurrer this must be assumed), the transaction was illegal and contra bonos mores.   In such circumstances equity will not interfere even to right what might otherwise seem to be a wrong; and the chancellor properly left both parties where he found them, by casting the case out of court.

It can not be argued that there was a mistake of law in this case, in view of the foregoing statements from the petition; and in the view which equity entertains of such matters, the statement attributed to Malloy that the agreement to work the road would be just as binding in parol as if it was preserved in writing was a correct statement of the law.   Whether the promise was merely oral or embodied in documentary form most solemn, equity would abhor the agreement and decline to enforce it.

*Judgment affirmed.   All the Justices concur.*